UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHRISTOPHER HYACINTH,

                      Plaintiff,

       -against-

JOINT INDUSTRY BOARD OF THE ELECTRICAL
INDUSTRY and LOCAL #3 IBEW,

                      Defendants.

**MEMORANDUM AND ORDER**
23-cv-8201 (LDH) (CLP)

Christopher Hyacinth ("Plaintiff"), proceeding pro se, brings the instant action against the Joint Industry Board of the Electrical Industry (the "Joint Board") and Local #3 IBEW ("Local #3") (collectively, "Defendants"), asserting claims under Title VII of the Civil Rights Act of 1964, the United States Constitution, federal and New York labor law, and common-law breach of contract. Defendants each move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint in its entirety.

## BACKGROUND[1]

Plaintiff is an electrician and has been a member of his union, Local #3, for thirty-five years. (Am. Compl. ¶¶ 21, 25–27, ECF No. 13.) Throughout his career, Plaintiff has consistently paid union dues and has never missed a payment. (*Id.* ¶¶ 29–30.) In 1997, Plaintiff fell from a ladder and suffered a severe injury to his right knee that required surgery. (*Id.* ¶ 32.) In 2015, Plaintiff experienced another knee injury, this time to his left knee after slipping on

---

[1] The following facts are taken from the Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

1

wires left on the ground.  (*Id.* ¶ 34.)  Plaintiff consulted two private doctors who recommended he repair his left knee surgically.  (*Id.* ¶¶ 35–38.)  On Defendants' insistence, Plaintiff visited a union doctor, who also recommended surgery on his injured left knee.  (*Id.* ¶¶ 39–40.)  Plaintiff underwent surgery sometime around November 2016 and returned to work in mid-2017.  (*Id.* ¶¶ 41, 43.)  For the next two years, Plaintiff continued to work in severe pain until his condition worsened in 2019.  (*Id.* ¶ 44.)  At that point, the three doctors whom Plaintiff had previously seen agreed that Plaintiff should undergo a complete knee replacement.  (*Id.* ¶ 46.)

Local #3 provides members a Pension Trust Fund Plan, administered by the Joint Board.  (*Id.* ¶ 22.)  In June 2019, Plaintiff requested a meeting with Local #3's pension director to discuss which benefits he would qualify for if he was unable to work after knee replacement surgery.  (*Id.* ¶ 47.)  Four months later, Plaintiff met with pension officer Moreen Steiger to discuss his options.  (*Id.* ¶¶ 48, 50.)  Among other things, Ms. Steiger advised Plaintiff that he qualified for an early pension and encouraged Plaintiff to apply for the New York State disability pension program.  (*Id.* ¶¶ 50, 53.)  Ms. Steiger advised Plaintiff that if he was deemed eligible for the New York State disability pension program, he would also qualify to receive a disability pension from Defendants.  (*Id.* ¶ 54.)

In April 2021, the New York State disability pension program approved Plaintiff's application for benefits, which he continues to receive.  (*Id.* ¶ 57.)  Plaintiff was, however, deemed "not qualified" for Local #3's disability pension plan.  (*Id.* ¶ 62.)  Specifically, Defendants informed Plaintiff that his application for a disability pension was denied because it was untimely.  (*Id.* ¶ 63.)  In response, Plaintiff explained that his application had been delayed because the agencies that possessed documentation critical to his application had shut down due to the COVID-19 pandemic, rendering it impossible for Plaintiff to obtain those documents in a

timely manner. (*Id.* ¶¶ 64–66.) Defendants responded that Ms. Steiger's initial assessment that Plaintiff qualified for an early pension was incorrect. (*Id.* ¶67.) Plaintiff alleges that these "excuses" for denying his "once approved" early retirement disability pension application are pretextual. (*Id.* ¶ 12.) According to Plaintiff, it was only after Ms. Steiger met with Plaintiff in person and discovered that he was African American that Plaintiff was informed that he was not qualified for an early disability pension. (*Id.*¶ 11.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Id.*; *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [c]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Morris*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999) (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*,

521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam) ). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

## DISCUSSION

Defendants each move for dismissal of Plaintiff's claims on various grounds. Defendants argue that Plaintiff cannot bring a Title VII claim because he failed to exhaust his administrative remedies. (Joint Board Mem. in Supp. of Mot. to Dismiss ("Joint Board Mem.") at 3, ECF No. 16-1; Local # 3 Mem. in Supp. of Mot. to Dismiss (Local # 3 Mem.") at 11–12, ECF No. 19.) Separately, the Joint Board argues that Plaintiff's constitutional claim must be dismissed because Plaintiff has not alleged state action, (Joint Board Mem. at 7), and his ERISA claim does not meet the basic pleading requirements, (*id.* at 6). The Court agrees with each of Defendants' arguments.

### I.   Title VII Claim

Prior to bringing a Title VII suit in federal court, "the claims forming the basis of such a suit must first be presented in a complaint to the [Equal Employment Opportunity Commission] or the equivalent state agency." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[A]s a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court."); 42 U.S.C. § 2000e-5(e)(1) and (f). "A Title VII claimant has not exhausted their administrative remedies if they fail to file a charge" of discrimination with the appropriate agency. *Hewitt v. New York City Dep't of Health & Mental Hygiene*, 535 F. App'x 44, 45 (2d

4

Cir. 2013) (summary order) (concluding that plaintiff had failed to "administratively exhaust her Title VII retaliation claim" because she did not include that claim in her charge to the EEOC).

Here, the Amended Complaint is utterly devoid of any allegations that Plaintiff filed a charge of discrimination against Defendants with the EEOC or an equivalent state agency. (*See generally* Am. Compl.) This failure to allege administrative exhaustion is fatal to his racial discrimination claim under Title VII. Plaintiff's racial discrimination claim is therefore dismissed.

## II.     Constitutional Claim

To allege a constitutional violation under Section 1983, the statute authorizing suits for the vindication of such violations, a plaintiff must allege that the "deprivation was committed under color of state law." *Am. Mfgs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (citation and internal quotations omitted). In other words, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Savs. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted).

Plaintiff alleges that Defendants denied his disability pension benefits "in violation of [his] constitutional rights." (Am. Compl. ¶ 71.) However, Defendants—a union and the board that administers the union's pension plan—are each private entities. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (holding that labor unions generally are not state actors). And, Plaintiff does not provide any allegations that might allow the Court to draw the

5

contrary inference that Defendants are state actors.  Plaintiff's constitutional claim is ripe for dismissal on this ground alone.

### III.   Disability Pension Benefit Claims

The Joint Board argues that Plaintiff's "federal labor law" claim should be dismissed because Plaintiff "gives no indication which federal labor law [he] believes the Joint Board violated."  (Joint Board Mem. at 7.)  Indeed, the Amended Complaint merely states that Defendants' "unjust denial of the plaintiff's disability pension [] constitutes a violation of . . . Federal Law [*sic*] Labor Law" without further specifics.  (Am. Compl. ¶ 71.)  Such imprecise pleading would ordinarily warrant dismissal.  The court is required, however, to read a pro se complaint liberally and interpret it as raising the strongest arguments it suggests.  *Sealed Plaintiff*, 537 F.3d at 191–93.  Although Plaintiff does not specify what federal law Defendants violated, the Court reasonably construes this claim as alleging a violation pursuant to § 502 of ERISA and to recover pension benefits he alleges Defendants owe him.

Under ERISA § 502(a)(1)(B), a participant in an ERISA-covered pension plan may bring a civil action to recover benefits due to them under the terms of their plan.  29 U.S.C. § 1132(a)(1)(B).  "To prevail under § 502, a plaintiff must allege that (1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan."  *AA Med., P.C. v. 1199 SEIU Benefit & Pension Fund*, No. 21-CV-5239 (JS)(SIL), 2024 WL 964712, at *4 (E.D.N.Y. Mar. 5, 2024) (citation and internal quotations omitted).

Here, Plaintiff alleges that "a legal contract" exists between Plaintiff and the Joint Board Defendants obligating the Joint Board Defendants to provide Plaintiff disability benefits "if the Plaintiff meets the necessary requirements to receive such benefits."  (Am. Compl. ¶ 22.)  It is

6

plausible to infer that the "legal contract" referred to by the Amended Complaint is the Pension Trust Fund Plan attached as an exhibit to the Amended Complaint, which Defendants do not dispute is covered by ERISA.  (*See* Notice of Removal ¶ 3, ECF No. 1 ("The Plan is an 'employee pension benefit plan' within the meaning of [ERISA] . . . .").)  Plaintiff has, therefore, satisfied his first two pleading requirements.  The same cannot be said of the third.

Plaintiff alleges that he was wrongfully denied benefits because he was initially informed that he would be "eligible" for early retirement benefits "if the New York State Disability Pension Program deemed him eligible for a disability pension."  (Am. Compl. ¶¶ 52, 54.)  Plaintiff continues that after he received confirmation of his eligibility for the New York Disability Program, (*id.* ¶ 56), Defendants denied his application,  (*id.* ¶¶ 60–61.)  Critically, Plaintiff's allegations *concede* that his application was untimely.  (*Id.* ¶¶ 62–63 (alleging that "Plaintiff subsequently informed the Defendant that his application for a disability pension had been delayed" and that "it was impossible for the Plaintiff to obtain the required documents from the state in a timely manner").)  Simply put, Defendants cannot have wrongly denied Plaintiff benefits that Plaintiff admits he sought in an untimely application.  Plaintiff fails to state a plausible claim under ERISA.

## IV.   State Law Claims

Plaintiff claims that Defendants violated New York labor law and also breached an agreement between them.  However, because the Court has dismissed Plaintiff's claims under federal law, it "decline[s] to exercise supplemental jurisdiction" over Plaintiff's state law claims [because it" has dismissed all claims over which it has original jurisdiction."  *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121–22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Amended Complaint are GRANTED with prejudice. Because further amendment would be futile, this dismissal is with prejudice. *Dollinger v. N.Y. State Ins. Fund*, 726 F. App'x 828, 831 (2d Cir. 2018) (summary order) ("[L]eave to amend can be denied if amendment would be futile."); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

SO ORDERED.

Dated: Brooklyn, New York  　　　　　　　/s/ LDH
　　　　September 30, 2024  　　　　　　　LaSHANN DeARCY HALL
　　　　　　　　　　　　　　　　　　　　United States District Judge